Slip Op. No. 22-70

UNITED STATES COURT OF INTERNATIONAL TRADE

ADEE HONEY FARMS, et al.,

               Plaintiffs,

     v.

UNITED STATES, et al.,

               Defendants.

Before: Timothy C. Stanceu, Judge

Consol. Court No. 16-00127

OPINION

[Denying motions of plaintiffs for judgment on the agency record]

Dated: June 16, 2022

*Paul C. Rosenthal*, Kelley Drye & Warren LLP, of Washington, D.C., for plaintiffs Adee Honey Farms, A. H. Meyer & Sons Inc., Mark Almeter, Jim Baerwald, Bailey Enterprises Inc., Beaverhead Honey Co. Inc., Bee Box Ranch, Bee Haven Inc., Bill Rhodes Honey Company LLC, Mark T. Brady, Brian N. Hannar, Curt Bronnenberg, Browns Honey Farms, Carys Honey Farms Inc., Charles L. Emmons, Robert S. Fullerton, Clyde A. Gray, Paul Hendricks, Coy's Honey Farm Inc., Culps Honey Farm LLC, Danzig Honey Company, Darren Cox, David W. Stroope Honey Company, Evergreen Honey Company Inc., Fischer's Honey Farm Inc., Gause Honey, Mark R. Gilberts, Godlin Bees, Inc., Dency's Inc., Grand River Honey Co., Inc., Harvest Honey Inc., Hiatt Honey, Honey House Ent., Bill Hurd, Ray L. Johnson, Jr., Johnston Honey Farms, Donald Kohn, Las Flores Apiaries Inc., Longs Apiaries, Long's Honey Farms Inc., Mackrill Honey Farms & Sales, McCoy's Sunny South Apiaries Inc., Merrimack Valley Apiaries Inc., Old Mill Apiaries, Dirk W. Olsen, William H. Perry, Robertson Pollination Service, Schmidt Honey Farms, Sioux Honey Association, Smoot Honey Co. Inc., Steve E. Park Apiaries, Strachan Apiaries Inc., Don Wiebersiek, Wilmer Farms Inc., Elmer J. Yaddof, Talbott's Honey, Christopher Ranch, LLC, L.K. Bowman Co., The Garlic Company, Vessey and Company, Inc., A & S Crawfish, Arnaudville Seafood Plant, Acadiana Fisherman's Cooperative, Atchafalaya Crawfish Processors, Inc., Bayou Land Seafood, LLC, Blanchard's Seafood, Inc., Bonanza Crawfish Farm, Inc., Cajun Seafood Distributor, Inc., Carl's Seafood, Catahoula Crawfish, Inc., Choplin Seafood,

Teche Valley Seafood, CJL Enterprises, Inc., Crawfish Enterprises, Inc., Harvey's
Seafood, L.T. West, Inc., Louisiana Premium Seafoods, Inc., Louisiana Seafood
Company, Phillips' Seafood, Prairie Cajun Wholesale Distributors, Inc., Randol, Inc.,
Riceland Crawfish, Inc., Seafood International, Inc., and Sylvester's Crawfish.  With him
on the submissions were *Michael J. Coursey*, *John M. Herrmann II*, *Jennifer E. McCadney*,
and *Cameron R. Argetsinger* of the same firm and *Louis S. Mastriani*, Adduci, Mastriani &
Schaumberg, also of Washington, D.C.

    *Adam H. Gordon,* The Bristol Group PLLC, of Washington, D.C., for plaintiff
Monterey Mushrooms, Inc.  With him on the submissions was *Lauren Fraid*.

    *Beverly A. Farrell*, Senior Trial Attorney, Commercial Litigation Branch, Civil
Division, U.S. Department of Justice, of New York, NY, for defendants United States,
U.S. Customs and Border Protection, and Chris Magnus, Commissioner of U.S. Customs
and Border Protection.  With her on the submissions were *Brian M. Boynton*, Principal
Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Justin R. Miller*,
Attorney-in-Charge, International Trade Field Office.  Of counsel were *Suzanna Hartzell-
Ballard* and *Jessica Plew*, Office of Assistant Chief Counsel, U.S. Customs and Border
Protection, of Indianapolis, Indiana.

    Stanceu, Judge: Plaintiffs are domestic producers of honey, crawfish, garlic, or

mushrooms that qualified as "affected domestic producers" ("ADPs") entitled to

receive certain cash distributions under the Continued Dumping and Subsidy Offset

Act of 2000 (the "CDSOA" or "Byrd Amendment"), 19 U.S.C. § 1675c.[1]  Under the Byrd

Amendment, ADPs received annual distributions resulting from the government's

collection of duties assessed and collected upon imported merchandise under

antidumping duty ("AD") and countervailing duty ("CVD") orders.

---

[1] All citations to the United States Code are to the 2012 edition unless otherwise
noted, except for citations to the Continued Dumping and Subsidy Offset Act of 2000
("CDSOA"), which are citations to 19 U.S.C. § 1675c as in effect prior to repeal.  All
citations to the Code of Federal Regulations are to the 2014 edition unless otherwise
noted.

In this litigation, plaintiffs claim that the U.S. Customs Service, now U.S.

Customs and Border Protection ("Customs" or "CBP"), unlawfully failed to include in

their distributions interest assessed after liquidation ("delinquency interest") that

pertained to collected antidumping or countervailing duties.

Before the court are plaintiffs' motions for judgment on the agency record under

USCIT Rule 56.1, in which they argue that CBP's refusal to include the delinquency

interest in their distributions was contrary to the Byrd Amendment and seek judgments

for payment of the interest they claim they should have received.  Because plaintiffs

have not demonstrated their entitlement to these judgments, the court denies their

motions.

## I. Background

Background on this litigation is presented in this court's prior Opinion and

Order granting defendants' motion to dismiss in part and denying it in part.  *See Adee*

*Honey Farms v. United States*, 44 CIT __, __, 450 F. Supp. 3d 1365, 1367–1370 (2020) ("*Adee*

*Honey Farms I*").

Various plaintiffs commenced separate actions on July 15, 2016,[2] which the court

consolidated on September 20, 2016.  Order (Sept. 21, 2016), ECF No. 13.  After

---

[2] Summons, Ct. No. 16-00127, ECF No. 1; Compl., Ct. No. 16-00127, ECF No. 2; Summons, Ct. No. 16-00129, ECF No. 1; Compl., Ct. No. 16-00129, ECF No. 2; Summons, Ct. No. 16-00130, ECF No. 1; Compl., Ct. No. 16-00130, ECF No. 2; Summons, Ct. No. 16-00131, ECF No. 1; Compl., Ct. No. 16-00131, ECF No. 2.

consolidation, defendants filed a motion to dismiss.  Defs.' Mot. to Dismiss (Jan. 9,

2017), ECF No. 19.  On February 6, 2017, plaintiffs filed four amended complaints.  First

Am. Compl. of Adee Honey Farms, et al., Ct. No. 16-00127, ECF No. 22; First Am.

Compl. of Christopher Ranch, LLC, et al., Ct. No. 16-00129, ECF No. 24; First Am.

Compl. of Monterey Mushrooms, Inc., Ct. No. 16-00130, ECF No. 25; First Am. Compl.

of A&S Crawfish, et al., Ct. No. 16-00131, ECF No. 23.

On June 1, 2020, this court issued its Opinion and Order in *Adee Honey Farms I*,

ruling that plaintiffs' claims seeking delinquency interest on any CDSOA distributions

received prior to July 15, 2014 were untimely according to the two-year statute of

limitations of 28 U.S.C. § 2636(i).  *Adee Honey Farms I*, 44 CIT at __, 450 F. Supp. 3d. at

1378.[3]

On May 24, 2021, the plaintiffs other than Monterey Mushrooms, Inc. ("Monterey

Mushrooms") filed a joint motion for judgment on the agency record and

accompanying brief.  Pls.' Rule 56.1 Mot. for J. on the Agency R., ECF No. 114; Mem. in

Supp. of Pls.' Rule 56.1 Mot. for J. on the Agency R., ECF No. 115 ("Pls.' Br.").  The same

day, Monterey Mushrooms filed its own motion for judgment on the agency record.

Pl. Monterey Mushrooms, Inc.'s Rule 56.1 Mot. for J. on the Agency R., ECF No. 113;

---

[3] Plaintiff Monterey Mushrooms, Inc.'s motion to reconsider the court's ruling in
*Adee Honey Farms v. United States*, 44 CIT __, 450 F. Supp. 3d 1365 (2020) was denied in a
prior Opinion and Order issued by the court.  *Adee Honey Farms v. United States*, 46 CIT
__, Slip Op. No. 22-60 (June 8, 2022).

Pl. Monterey Mushrooms, Inc.'s Br. in Supp. of Mot. for J. on the Agency R., ECF No.

113-1 ("Monterey Mushrooms' Br.").

On August 9, 2021, the government responded in opposition to the plaintiffs'

motions.  Defs.' Resp. to Pls.' Rule 56.1 Mot. for J. on the Agency R., ECF No. 122; Defs.'

Resp. to Pl.'s, Monterey Mushrooms, Inc., Br. in Supp. of Mot. for J. on the Agency R.,

ECF No. 123.  Plaintiffs replied on October 8, 2021.  Pl. Monterey Mushrooms, Inc.'s

Reply Br., ECF No. 126; Reply in Supp. of Pls.' Rule 56.1 Mot. for J. on the Agency R.,

ECF No. 127.

On October 14, 2021, plaintiffs filed consent motions for oral argument.  Consent

Mot. for Oral Arg., ECF No. 128; Pls.' Consent Mot. for Oral Arg., ECF No. 129.

## II.  DISCUSSION

### A.  Subject Matter Jurisdiction and Standard of Review

The court exercises subject matter jurisdiction according to section 201 of the

Customs Courts Act of 1980, 28 U.S.C. § 1581(i).  Subparagraph (1)(B) of § 1581(i) grants

this court jurisdiction of any civil action "that arises out of any law of the United States

providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise

for reasons other than the raising of revenue," and subparagraph (1)(D) of § 1581(i)

provides this court jurisdiction of any civil action "that arises out of any law of the

United States providing for . . . administration and enforcement with respect to the

matters referred to in subparagraphs (A) through (C) of this paragraph . . . ."

As directed by 28 U.S.C. § 2640(e), the court "shall review the matter as provided in section 706 of title 5."  The latter provision, of the Administrative Procedure Act, directs the court, *inter alia*, to "hold unlawful and set aside agency action, findings, and conclusions found to be— . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

### B.  "Continued Dumping and Subsidy Offsets" under the Byrd Amendment

The CDSOA, 19 U.S.C. § 1675c, enacted in October 2000 and repealed in February 2006,[4] amended the Tariff Act of 1930 ("Tariff Act") to direct Customs to distribute funds from assessed antidumping and countervailing duties to ADPs on a federal fiscal year basis, as compensation for certain qualifying expenditures.  19 U.S.C. § 1675c(a). The CDSOA defined an "affected domestic producer" generally as a "manufacturer, producer, farmer, rancher, or worker representative" that was a "petitioner or interested party in support of the petition with respect to which an antidumping duty . . . or a countervailing duty order has been entered" and that "remains in operation."

---

[4] Under the terms of the 2006 legislation repealing the CDSOA, Customs is to distribute antidumping and countervailing duties assessed on entries made before October 1, 2007, subject to certain limitations imposed in 2010.  *See* Deficit Reduction Act of 2005, Pub. L. No. 109-171, 120 Stat. 4, 154 (2006), *amended by* Claims Resolution Act of 2010, Pub. L. No. 111-291, 124 Stat. 3064, 3163, *amended by* Tax Relief, Unemployment Insurance Reauthorization & Job Creation Act of 2010, Pub. L. No. 111-312, 124 Stat. 3296, 3308 (current version at 19 U.S.C. § 1675c note).

*Id*. § 1675c(b)(1).  The annual distribution an ADP received was identified in the CDSOA

"as the 'continued dumping and subsidy offset.'"  *Id*. § 1675c(a).

Under the CDSOA, domestic parties who qualified as petitioners or parties in

support of an antidumping duty or countervailing duty petition were identified initially

by the U.S. International Trade Commission, which then provided a list of these parties

to Customs.  *Id*. § 1675c(d)(1).  Customs was required to publish annually a notice of

intent to distribute CDSOA funds for the relevant fiscal year that included the current

list and invited submissions of certifications of eligibility, each of which was required to

include, *inter alia*, a certification of qualifying expenditures.  *Id*. § 1675c(d)(2).

The CDSOA prescribed a detailed procedure by which Customs was to retain

antidumping and countervailing duties and distribute them annually to ADPs.

Customs was directed to establish a "special account" in the U.S. Treasury for each

then-existing and future AD or CVD order, into which it was to deposit all antidumping

and countervailing duties "assessed" under such order, after the effective date of the

CDSOA.  *Id*. § 1675c(e).  Customs was directed to distribute to ADPs, each federal fiscal

year on a pro-rata basis, the "funds" from the assessed duties for the respective AD or

CVD order that were "received in the preceding fiscal year," based on each ADP's

certification of "new and remaining qualifying expenditures."  *Id*. § 1675c(d)(3).

Distributions were required to occur within 60 days following the first day of the fiscal

year.  *See id*. § 1675c(c).

### C.  Implementation of the CDSOA by Customs

Following notice and comment on a proposed rule, Customs promulgated a final

rule to prescribe "administrative procedures, including the time and manner, under

which antidumping and countervailing duties assessed on imported products would be

distributed to affected domestic producers as an offset for certain qualifying

expenditures."  *Distribution of Continued Dumping and Subsidy Offset to Affected Domestic*

*Producers*, 66 Fed. Reg. 48,546, 48,546 (Customs Serv. Sept. 21, 2001) (codified at

19 C.F.R. §§ 159.61–159.64, 178.2 (2002)); *see* 19 U.S.C. § 1675c(c) ("the Commissioner [of

Customs] shall prescribe procedures for distribution of the continued dumping or

subsidies offset required by this section."), (e)(3) ("Consistent with the requirements of

subsections (c) and (d), the Commissioner [of Customs] shall by regulation prescribe the

time and manner in which distribution of the funds in a special account shall be

made.").

In promulgating its regulations, Customs made several interpretations of the

CDSOA.  One example concerned the interpretation of the word "assessed" as it is used

throughout the CDSOA to modify the word "duties."  The CDSOA refers to "duties

assessed" pursuant to a countervailing or antidumping duty order, *id*. § 1675c(a), and

imposes the parallel requirements to deposit into the special accounts all "duties . . .

that are assessed" under such an order, *id*. § 1675c(e)(2), and to distribute annually to

ADPs "all funds . . . from assessed duties," *id*. § 1675c(d)(3).  Customs interpreted these

references to mean antidumping and countervailing duties that are "assessed" at liquidation and collected by Customs, both as estimated duties deposited with Customs upon or soon after entry, and as payments of any additional amounts owing following liquidation of that entry. *See* 19 C.F.R. § 159.64. The interpretation of the word "assessed" to refer to duties assessed at liquidation, and collected by Customs both before and after liquidation, is not challenged in this litigation.[5]

Also unchallenged in this litigation is a decision by Customs to establish "Clearing Accounts," a procedural measure not mentioned in the CDSOA, which directs the creation of only the Special Accounts. Customs designated the Clearing Accounts for the deposit of estimated antidumping and countervailing duties, *id*. § 159.64(a)(2), reserving the Special Accounts for the transfer from the Clearing Accounts of antidumping duties and countervailing duties "when an entry upon which antidumping or countervailing duties are owed is properly liquidated pursuant to an order, finding or receipt of liquidation instructions," *id*. § 159.64(b)(1)(ii).

The dispute in this case arose instead from the interpretation that Customs, upon promulgating its implementing regulations, gave to a provision of the CDSOA—the

---

[5] The court does not suggest or imply that the agency's interpretation of "assessed" to mean "assessed and collected" is unreasonable. The contrary interpretation would result in deposits from the U.S. Treasury into the Special Accounts of amounts not collected, or not yet collected, from importers. Moreover, the statute, in a provision on the termination of a Special Account, refers to the time that "all entries relating to the order or finding are liquidated and duties assessed *collected*." 19 U.S.C. § 1675c(e)(4)(B) (emphasis added).

"Deposits into Accounts" provision—with respect to the treatment of interest earned by the government on antidumping and countervailing duties.  As discussed in further detail below, Customs interpreted this provision as requiring it to deposit into the Special Accounts the interest the government earned on underpaid deposits of estimated antidumping and countervailing duties that was assessed at liquidation and later collected.  Customs did not place into the Special Accounts any interest the government earned that was assessed and collected after liquidation of the entries.  The issue presented in this litigation is whether that interpretation was a permissible one. As discussed below, the court concludes that it was.

### D.  The Interpretation of the "Deposits into Accounts" Provision of the CDSOA Adopted by Section 159.64(e) of the Customs Regulations

The Byrd Amendment provision directly at issue in this litigation reads as follows:

> DEPOSITS INTO ACCOUNTS.—The Commissioner shall deposit into the special accounts, all antidumping or countervailing duties (including *interest earned on* such duties) that are assessed after the effective date of this section under the antidumping order or finding or the countervailing duty order with respect to which the account was established.

19 U.S.C. § 1675c(e)(2) (emphasis added).  In promulgating and administering its implementing regulations, Customs interpreted the term "including interest earned on such duties" to mean that it would deposit into the Special Accounts the interest on underpayments of antidumping and countervailing duties that the government earns up until the time of liquidation of the entry, and determines as a fixed amount upon

liquidation, but not any "delinquency" interest it earns on the entry thereafter.[6]  The

implementing regulations expressed this decision as follows:

> *Interest on Special Accounts and Clearing Accounts*.  In accordance with
> Federal appropriations law, and Treasury guidelines on Special Accounts,
> funds in such accounts are not interest-bearing unless specified by
> Congress.  Likewise, funds being held in Clearing Accounts are not
> interest-bearing unless specified by Congress.  Therefore, no interest will
> accrue in these accounts.  However, statutory interest charged on
> antidumping and countervailing duties at liquidation will be transferred
> to the Special Account, when collected from the importer.

19 C.F.R. § 159.64(e).  The narrow question presented by this litigation is whether the

phrase "including interest earned on such duties" as used in the Deposits into Accounts

provision, 19 U.S.C. § 1675c(e)(2), is permissibly interpreted to allow Customs to

deposit into the Special Accounts only "interest charged on antidumping and

countervailing duties *at liquidation*," 19 C.F.R. § 159.64(e) (emphasis added).[7]

---

[6] Prior to 2016, Customs deposited interest assessed at liquidation on underpaid
deposits of antidumping and countervailing duties, but not interest accruing after
liquidation, into the special accounts for distributions made to affected domestic
producers under the CDSOA.  Defs.' Mot. to Dismiss 4 (Jan. 9, 2017), ECF No. 19.  In
2016, Congress required specified types of interest paid on a bond or by a surety,
including interest accruing after liquidation, to be included in CDSOA distributions.
Congress did not address the question of interest other than interest paid on a bond or
by a surety, nor did it make the provision retroactive.  *See* Trade Facilitation and Trade
Enforcement Act of 2015, Pub. L. No. 114-125, 130 Stat. 122, 187–88 (2016) ("TFTEA").
All CDSOA distributions at issue in this Opinion and Order occurred prior to the 2016
enactment of TFTEA.

[7] The decision by the U.S. Customs Service that the Special Accounts and
Clearing Accounts would not bear interest, which Customs combined in 19 C.F.R.
(continued . . .)

### E.  Judicial Review of Statutory Interpretations by Agencies to Which Congress Delegated Rulemaking Authority

When a government agency promulgates a rule interpreting a provision within a statutory scheme the agency is entrusted by Congress to administer, the court proceeds according to the Supreme Court's analysis in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–46 (1984) ("*Chevron*").  As *Chevron* instructed, "[f]irst, always, is the question whether Congress has directly spoken to the precise question at issue.  If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  *Id.* at 842–43 (footnote omitted).  "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect."  *Id*. at 843 n.9.  For a *Chevron* "step one" analysis, "traditional tools of statutory construction," *id*., include the examination of the statutory text and structure and the legislative history.  *See, e.g., Aqua Prods., Inc. v. Matal*, 872 F.3d 1290, 1303, 1312–14 (Fed. Cir. 2017) (en banc); *Gazelle v. Shulkin*, 868 F.3d 1006, 1010 (Fed. Cir. 2017), *cert. denied*, 138 S.Ct. 690 (2018) ("We may find Congress has expressed unambiguous intent by examining the statute's text, structure, and legislative history, and apply the relevant canons of interpretation.")

---

§ 159.64(e) with its decision on the interest it would deposit on assessed duties, is not contested in this litigation.

(internal quotations and citations omitted); *Kyocera Solar, Inc. v. U.S. Int'l Trade Comm'n*, 844 F.3d 1334, 1338 (Fed. Cir. 2016).  If the intent of Congress is not clear, the court, under "step two" of a *Chevron* analysis, must accept the agency's interpretation of the statute if it is reasonable and "may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Chevron*, 467 U.S. at 844 (footnote omitted).

### F. CDSOA Provisions Addressing Interest "Earned on" Assessed AD and CVD Duties and "Funds" from Such Assessed Duties

The court begins with the text of the provision directly at issue.  *See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980) ("We begin with the familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself.  Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.").  In the Deposits into Accounts provision, Congress directed Customs to deposit into the Special Accounts "all antidumping or countervailing duties (including *interest earned on* such duties) that are assessed" under an AD or CVD order.  19 U.S.C. § 1675c(e)(2) (emphasis added).  In speaking broadly of interest "earned on" these duties, the provision addresses *whether* interest is earned on the duties and does not distinguish as to *when* interest is earned.  In that respect, the plain meaning of the phrase "interest

earned on such duties," at first blush, does not favor the agency's interpretation.[8]

Nevertheless, the provision is not free of ambiguity.  Understanding the meaning of the

words "interest earned on such duties" requires consideration of other provisions of the

Tariff Act, which govern how antidumping and countervailing duties earn interest for

the government.  Congress must be presumed to have been aware, also, that upon

liquidation, Customs combines underpaid duties, taxes, fees, and accrued interest to

calculate a single amount that is owed by the importer of record on the entry as a

whole.  *See* 19 U.S.C. § 1505(b), (c).  Thus, once all duties, taxes, fees, and interest owed

upon an entry for consumption are "liquidated," i.e., reduced to a single sum to which

certain aspects of finality have attached, the individual amounts of the various duties,

taxes, fees, and interest might be seen as having lost their individual character as a

result of the liquidation process.  Under that reasoning, Congress could have

---

[8] Defendants argue that the words "are assessed" as used in 19 U.S.C. § 1675c(e)(2) limit the scope of the provision to interest that is "assessed" at liquidation, not interest that accrues thereafter.  Defs.' Resp. to Pls.' Rule 56.1 Mot. for J. on the Agency R. 16–19 (Aug. 9, 2021), ECF No. 122; Defs.' Resp. to Consolidated Pl.'s, Monterey Mushrooms, Inc., Br. in Supp. of Mot. for J. on the Agency R. 16–19 (Aug. 9, 2021), ECF No. 123.  The court disagrees.  The wording does not support defendants' interpretation: "The Commissioner shall deposit into the special accounts, all antidumping or countervailing *duties* (including interest earned on such duties) that *are assessed* . . . ."  19 U.S.C. § 1675c(e)(2) (emphasis added).  The subject of the sentence containing the predicate "are assessed" is the plural term "duties," not the singular term "interest."  An interpretation that accords with plain meaning should not dispense with agreement between subject and verb.

considered the interest accruing on an entry after liquidation to be accruing on the entry

as a whole and not on those individual amounts.

One other provision of the CDSOA, the "Distribution of Funds" provision, also

mentions interest "earned."  This provision does not resolve the ambiguity surrounding

the issue of whether interest accruing on delinquent amounts after the liquidation

process is completed is interest that is "earned" within the intended meaning of the

CDSOA.  The first sentence of the Distribution of Funds provision reads as follows:

> DISTRIBUTION OF FUNDS.—The Commissioner shall distribute all
> funds (including *all interest earned on* the funds) from assessed duties
> received in the preceding fiscal year to affected domestic producers based
> on the certifications described in paragraph (2).

*Id*. § 1675c(d)(3) (emphasis added).  While it is plausible to interpret the phrase "all

interest earned on the *funds*" to refer only to interest earned on the Special Accounts (of

which interest, Customs concluded, there could be none), as opposed to interest earned

on underpaid duties, this is not the only possible interpretation.  *Id.* (emphasis added).

In the same provision, Congress referred to "funds . . . *from assessed duties* received in

the preceding fiscal year."  *Id*. (emphasis added).  Also, Congress used the term "funds

*in* a special account" in referring to what is to be distributed to ADPs, *id*. § 1675c(e)(3)

(emphasis added), suggesting that the word "funds" refers to what is in a Special

Account as opposed to the Special Account itself.  When read in conjunction with the

Deposits into Accounts provision, the Distribution of Funds provision is reasonably

interpreted to address the distribution of the duties, and the interest earned thereon,

that are deposited into the Special Accounts according to the Deposits into Accounts provision.

In summary, the Deposits into Accounts and Distribution of Funds provisions indicate congressional intent that Customs would: (1) deposit into the Special Accounts assessed antidumping and countervailing duties, *id*. § 1675c(e); (2) deposit also into the Special Accounts "interest," *id*. § 1675c(e)(2), i.e., "all interest," *id*. § 1675c(d)(3), earned on such "funds" or "duties"; and (3) distribute to ADPs all funds from assessed duties, together with all interest earned thereon, received in the preceding fiscal year, *id*. Although the CDSOA sets forth in some detail the procedures for distribution of "continued dumping and subsidy offsets," neither the Deposits into Accounts provision nor the Distribution of Funds provision defines precisely what is meant by the use of the term "interest earned on such duties" or the term "all interest earned on the funds," respectively.  Therefore, the court looks beyond the CDSOA to other Tariff Act provisions that affect how antidumping and countervailing duties earn interest for the government for an indication of what Congress may have meant in using the term "interest earned."

### G.  Tariff Act Provisions on the Government's Earning of Interest on Countervailing and Antidumping Duties

The Trade Agreements Act of 1979 (the "TAA") amended the Tariff Act to provide that underpayments on deposited antidumping and countervailing duties would earn interest for the government and that overpayments would earn interest for

the importer.  Pub. L. No. 96-39, 93 Stat. 144, 188–89.  In its current form and in the form

in which it relates to this litigation, Section 778(a) of the Tariff Act provides that

"[i]nterest shall be payable on overpayments and underpayments of amounts deposited

on merchandise entered, or withdrawn from warehouse, for consumption on and after

. . . the date of publication of a countervailing or antidumping duty order under this

subtitle . . . ."[9]  19 U.S.C. § 1677g(a).  The current requirement to deposit estimated

countervailing and antidumping duties during the entry process appeared in related

provisions of the TAA.[10]

---

[9] As originally enacted, the Trade Agreements Act of 1979 (the "TAA") made the interest provision applicable on and after the date of notice of an affirmative injury/threat determination by the U.S. International Trade Commission.  Pub. L. No. 96-39, 93 Stat. 144, 188–89.  Congress amended the provision in the Trade and Tariff Act of 1984 to provide that the interest would be payable on and after the date of publication of a countervailing duty or antidumping duty order.  Pub. L. No. 98-573, 98 Stat. 2948, 3039.

[10] The related provisions in the TAA provided for cash deposits of estimated antidumping and countervailing duties, in procedures parallel to those of Section 505 of the Tariff Act, 19 U.S.C. § 1505, as in effect at the time for ordinary ("normal") customs duties.  The Tariff Act of 1930 provides for the deposit of estimated countervailing duties (in an amount determined by the International Trade Administration, Department of Commerce, not Customs) in section 706(a)(3), which requires, following publication of a countervailing duty order, "the deposit of estimated countervailing duties pending liquidation of entries of merchandise *at the same time as estimated normal customs duties on that merchandise are deposited*."  19 U.S.C. § 1671e(a)(3) (emphasis added).  A nearly identical provision, Section 736(a)(3) of the Tariff Act, requires, following publication of an antidumping duty order, "the deposit of estimated antidumping duties pending liquidation of entries of merchandise at the same time as estimated normal customs duties on that merchandise are deposited."  19 U.S.C. § 1673e(a)(3).

At the time of the 1979 amendment, the Tariff Act, while requiring (in Section 505(a) thereof) the deposit of estimated duties "at the time of making entry," did not provide for the assessment of interest, at the time of liquidation, on overpayments or underpayments of estimated ordinary ("normal") customs duties.  19 U.S.C. § 1505 (1976).  Nor did the Tariff Act, at that time, provide for interest on late payment of additional duties that Customs billed to the importer after the completion of the liquidation process.  Under the 1979 amendment, therefore, the interest described in Section 778(a), 19 U.S.C. § 1677g(a), began accruing when the estimated antidumping or countervailing duties were required to be deposited, and it stopped accruing upon liquidation of the entry.  Customs implemented the CDSOA so as to deposit this "liquidated" interest and include it in the annual distributions to the ADPs.

The authority for the "delinquency" interest plaintiffs seek in this litigation was added to the Tariff Act five years after the TAA.  In the Trade and Tariff Act of 1984, Congress amended Section 505 of the Tariff Act to add a new subsection (then subsection (c)), which provided for "delinquency interest" on late payments of amounts Customs determined in the liquidation process to be owing.  The new subsection read as follows:

> Duties determined to be due upon liquidation or reliquidation shall be due 15 days after the date of that liquidation or reliquidation, and unless payment of the duties is received by the appropriate customs officer within 30 days after that date, shall be considered delinquent and bear interest from the 15th day after the date of liquidation or reliquidation at a rate determined by the Secretary of the Treasury.

Pub. L. No. 98-573, 98 Stat. 2948, 2977 (1984).  By regulation, the Treasury Secretary

provided that underpayments would be charged interest at the interest rate set

semiannually according to 26 U.S.C. § 6621 and compounded daily in accordance with

26 U.S.C. § 6622.  *Calculation of Interest on Overdue Accounts and Refunds*, 50 Fed.

Reg. 21,832 (Custom Servs. May 29, 1985).

    In the North American Free Trade Agreement Implementation Act ("NAFTA

Implementation Act"), Congress amended Section 505 of the Tariff Act to provide for

the accrual to the government of interest on underpayments of ordinary ("normal")

customs duties (as well as the accrual of interest to the importer of record of interest on

any excess monies deposited).  Pub. L. No. 103-182, 107 Stat. 2057, 2205 (1993).

Subsection (a) of that section requires the importer of record to deposit with Customs

"at the time of entry or such later time as the Secretary may prescribe by regulation (but

not later than 12 working days after entry or release) the amount of duties and fees

estimated to be payable on such merchandise."  19 U.S.C. § 1505(a).  Subsection (b) of

the amended Section 505 directs Customs to collect "any increased or additional duties

and fees due, together with interest thereon . . . as determined on a liquidation or

reliquidation."  *Id*. § 1505(b).  "Duties, fees, and interest determined to be due upon

liquidation or reliquidation are due 30 days after issuance of the bill for such payment."

*Id*.  In subsection (c) of section 505 as amended by the NAFTA Implementation Act,

Congress specified the timing of the accrual of the interest the government earns from

any underpayment of the deposit of estimated duties and fees required under

subsection (a) of that section.  According to the provision, "[i]nterest assessed due to an

underpayment of duties, fees, or interest shall accrue, at a rate determined by the

Secretary, from the date the importer of record is required to deposit estimated duties,

fees, and interest to the date of liquidation or reliquidation of the applicable entry or

reconciliation."  19 U.S.C. § 1505(c).

In the new Section 505(d), Congress retained the delinquency provision in more

detailed form, providing that "[i]f duties, fees, and interest determined to be due or

refunded are not paid in full within the 30-day period specified in subsection (b) [which

begins with the issuance of the bill by Customs], any unpaid balance shall be

considered delinquent and bear interest by 30-day periods, at a rate determined by the

Secretary, from the date of liquidation or reliquidation until the full balance is paid."  *Id*.

§ 1505(d).  The provision adds that "[n]o interest shall accrue during the 30-day period

in which payment is actually made."[11]  *Id*.

### H.  The Agency's Interpretation of the Interest Provisions in the CDSOA Is Reasonable

The history of the interest provisions in Section 778(a) of the Tariff Act, 19 U.S.C.

§ 1677g, and Section 505(d) of the Tariff Act, 19 U.S.C. § 1505(d), and the effect of the

---

[11] It appears that the amended delinquency provision conformed the statute to the implementing regulations for the then-existing provision.  *See Calculation of Interest on Overdue Accounts and Refunds*, 50 Fed. Reg. 21,832 (Customs Serv. May 29, 1985).

liquidation process cause the court to conclude that the agency's interpretation was reasonable.

As the court explained above, the statutory history indicates that Section 778(a) interest accrues from the date of required deposit to the date of liquidation, and not beyond that date, and that when Congress provided for Section 778(a) interest in 1979, the Tariff Act did not provide for delinquency interest, which Congress created five years later.  Section 778(a) interest, unlike Section 505(d) interest, is unique to antidumping and countervailing duties.  Interest on antidumping and countervailing duties accruing from the time of the required deposit to the liquidation of the entry and assessed at liquidation unambiguously can be described as interest earned *on* those duties.  But the same cannot be said for interest that begins to accrue on the total amount owing on an already-liquidated entry.  The concept of "liquidation" under the Tariff Act reinforces this conclusion.

Liquidation is the procedural step during which the amount the importer of record owes on the entry is "fixed," i.e., becomes final for most purposes under the Tariff Act.  *See* 19 U.S.C. §§ 1500, 1514.  Although the Tariff Act provides for certain exceptions to this finality, *see*, *e.g.*, *id*. §§ 1501 (reliquidation), 1592 (entry by means of fraud, gross negligence, or negligence), the basic principle is that the individual amounts of duties and fees (including the amount of antidumping or countervailing duties, together with any interest required to be assessed by 19 U.S.C. § 1677g) are

"fixed," i.e., ascertained, combined into a single sum, and billed to the importer of record.[12]  While the specific amount of interest "earned on" underpaid antidumping and countervailing duties under Section 778(a) is "fixed" at the time of liquidation, no interest, and no portion of the interest, accruing under Section 505(d) can be described in this way.  In light of this intricate statutory structure, the interest assessed under Section 505(d) reasonably may be viewed as interest owing on a combined, "liquidated" amount for the entry rather than interest "earned on" antidumping or countervailing duties *per se*.  Therefore, it was reasonable for Customs to interpret the CDSOA as requiring the deposit and distribution of only that interest on antidumping and countervailing duties that was assessed at liquidation of the entry.

In the brief for plaintiffs (other than Monterey Mushrooms), it is argued that the words "all interest" as used in the Distribution of Funds provision are unambiguous and must be interpreted to include delinquency interest.  These plaintiffs argue that Congress was aware that three different types of interest (Section 505(d) interest, interest under 19 U.S.C. § 580 accruing on late payments under surety bonds, and Section 778(a) interest) accrue on unpaid antidumping and countervailing duties and

---

[12] Antidumping and countervailing duties, like ordinary duties, for most purposes are fixed at the time of liquidation of the entry.  For example, the Tariff Act provides that judicial challenges brought under 19 U.S.C. § 1516a to the individual amount of antidumping or countervailing duties owing, as determined by the International Trade Administration, U.S. Department of Commerce, may no longer be brought after the entry is liquidated.  *See* 19 U.S.C. § 1516a(e).

used the words "all interest" to describe these different types of interest.  *See*, *e.g.*, Pls.'

Br. 21 (". . . 'all' has a broad, inclusive common meaning that is not compatible with the

restrictive interpretation Customs has assigned to 'interest' under the CDSOA.").

Monterey Mushrooms makes a similar argument.  Monterey Mushrooms' Br. 19–21.[13]

The court disagrees that the statute is unambiguous on the question of whether

interest under Section 505(d) must be deposited and distributed.  Contrary to the

arguments the plaintiffs advance, the ambiguity stems not from the words "interest" or

"all interest" but from the phrase "interest *earned on*," which appears in both the

Deposits into Accounts and Distribution of Funds provisions.  The interest Congress

had in mind must have been "earned on" assessed antidumping or countervailing

duties, 19 U.S.C. § 1675c(e)(2), or earned on the "funds . . . from assessed duties," *id*.

---

[13] Monterey Mushrooms, Inc. also argues that no deference is owed to the decision by Customs not to deposit and distribute delinquency interest because the implementing regulation is silent on this point.  Pl. Monterey Mushrooms, Inc.'s Br. in Supp. of Mot. for J. on the Agency R. 21–27 (May 24, 2021), ECF No. 113-1 ("Monterey Mushrooms' Br.").  This argument lacks merit.  As the court ruled in *Adee Honey Farms v. United States*, 44 CIT __, 450 F. Supp. 3d 1365 (2020), 19 C.F.R. § 159.64(e) provides for the deposit of Section 778(a) interest into the Special Accounts, mentioning no other type of interest, and the preamble to the regulation clarifies that no other type of interest will be deposited.

Monterey Mushrooms, Inc. makes the related argument that U.S. Customs and Border Protection ("Customs") lacked statutory authority to make "substantive determinations" such as deciding what type of interest would be deposited.  Monterey Mushrooms' Br. 17.  This argument is specious.  Congress directed Customs to "prescribe procedures for distribution of the continued dumping or subsidies offset required by this section," 19 U.S.C. § 1675c(c), and Customs could not do so without interpreting—in one way or another—what Congress meant when using, in the relevant CDSOA provisions, the ambiguous term "interest earned" on the duties or funds.

§ 1675c(d)(3).  For the reasons the court has discussed, interest earned on a delinquent

payment of an already-liquidated entry can be viewed as having been earned on the

single, liquidated sum that is in arrears.  As a result of the liquidation, this sum is a

procedural step removed from the interest accruing under the only statutory provision,

19 U.S.C. § 1677g, that Congress directed specifically to interest earned on antidumping

and countervailing duties.

### III. Conclusion

Due to the ambiguity inherent in the words "earned on," the court concludes that

it must analyze the CDSOA according to step two of the analysis required by *Chevron*.

Even were the court to conclude that plaintiffs' interpretation of the statutory

provisions is the more reasonable one (and it does not so conclude), still it would be

required to accept the agency's interpretation if that interpretation also is reasonable.

*See Chevron*, 467 U.S. at 843.  Customs is the agency Congress "entrusted" to administer

not only the CDSOA but also the other provisions of the Tariff Act, i.e., the "statutory

scheme," defining how interest is earned on antidumping and countervailing duties.  *Id.*

(footnote omitted).

The court concludes that Customs reasonably interpreted the CDSOA as

requiring deposit into the Special Accounts only the interest on countervailing and

antidumping duties accruing from the time of required deposit to liquidation of the

entries.  The Tariff Act establishes a direct connection between interest accruing under

Section 778(a), 19 U.S.C. § 1677g, and the specific type of duties upon which it accrues

and according to which it is determined upon liquidation.  Under statutory language

susceptible to more than one interpretation, it was reasonable for Customs to conclude

that Congress specifically contemplated only this type of "interest" on "assessed" duties

when enacting the CDSOA.

As the court also has discussed, the history and structure of the relevant Tariff

Act provisions reveals that Section 778(a) interest, which is the only type of interest

specific to antidumping and countervailing duties, stops accruing at liquidation.  In

contrast, Section 505(d) interest, which is not determined at liquidation, accrues on the

amount Customs bills to an importer of record that is not paid (by the importer of

record or its surety) within the 30-day period provided for in Section 505(c) of the Tariff

Act.  The components in the total sum consisting of underpaid antidumping or

countervailing duties and the Section 778(a) interest thereon were assessed and billed to

the importer, together with all other amounts owing, as a result of liquidation.  Under

the statutory scheme, considered on the whole, it was reasonable for Customs to view

those components as having lost their individual character as a result of the liquidation

process.  Consistent with the interpretation Customs adopted, interest "earned on" the

antidumping and countervailing duties can be viewed as interest determined at

liquidation to have accrued, i.e., "earned," by the government on those specific duties,

in an amount that stopped accruing *at* liquidation and was fixed *upon* liquidation.

**Consol. Court No. 16-00127**                                                                **Page 26**

Pursuant to USCIT Rule 56.1, the court will deny the motions for judgment on

the agency record and enter judgment for defendants.

/s/ Timothy C. Stanceu
Timothy C. Stanceu, Judge

Dated: June 16, 2022
        New York, New York